**UNITED STATES POSTAL SERVICE,
Plaintiff–Appellee,**

**v.**

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Defendant–Appellant.**

**No. 90–1562
Summary Calender.**

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1991.

Rehearing Denied Feb. 26, 1991.

Darryl J. Anderson, O'Donnell, Schwartz & Anderson, Washington, D.C., L.N.D. Wells, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for defendant-appellant.

Kevin B. Rachel, Office of Labor Law, U.S. Postal Service, Washington, D.C., for plaintiff-appellee.

Before GEE, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant–Appellant, the American Postal Workers Union, AFL–CIO (APWU), appeals the summary judgment which the district court granted in favor of plaintiff-appellee, the United States Postal Service (Postal Service). Stating that the arbitrator had clearly exceeded his authority under the terms of the collective bargaining agreement, the district court vacated the award of the arbitrator who had directed that a probationary postal employee be reinstated. Finding that the arbitrator exceeded his authority, we affirm.

## OPERABLE FACTS

The discharged employee, Darel Smith, was hired on March 15, 1986, as a distribution clerk at the Fort Worth, Texas, Post Office. As a new employee, Smith had to serve a 90–day probationary period. On Smith's thirty-day evaluation his supervisor stated that Smith was failing to meet expectations, but he did not recommend that Smith be terminated. In a memo dated April 19, 1986, his supervisor requested that Smith be immediately terminated. The Postal Service had not acted upon that request when during Smith's probationary period, on April 26, 1986, Smith was injured in a work-related automobile accident. As a result of the accident Smith was placed on "compensable leave" pursuant to the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101 et seq.

On May 15, 1986, while Smith was on compensable leave and less than ninety days after he had entered its employment, the Postal Service fired Smith because of his "unsatisfactory performance as a Postal employee." Smith recovered from his injury and was able to return to work on May 18, 1986.

Contesting Smith's discharge, the APWU filed a grievance pursuant to the collective bargaining agreement (National Agreement) between the Postal Service and the APWU. At arbitration the APWU contended that Smith was fired because of his compensable injury and that his firing violated FECA and postal regulations imple-

menting FECA.[1] The APWU sought to have Smith reinstated with full seniority status (with no further probation) and compensation for all lost wages. In its defense the Postal Service asserted that the arbitrator had no authority to hear the grievance because the terms of the National Agreement prohibited the union from contesting the discharge of a probationary employee.

The arbitrator addressed two issues: (1) "whether the instant grievance is arbitrable; and (2) whether the grievant's termination violated the National Agreement and/or federal law, and if so, what is the remedy?" Having found the grievance arbitrable, the arbitrator found that the Postal Service had violated the national agreement. He ordered that Smith be reinstated as a probationary employee and be made whole for all financial loss, but determined that Smith was not entitled to full seniority status. Pursuant to Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), the Postal Service then brought suit to vacate the award. Both parties moved for summary judgment, which by order dated May 16, 1990, the district court granted in the Postal Service's favor. This appeal timely followed.

## DISCUSSION

### I

 Federal law encourages private resolution of labor disputes through arbitration. *See* 29 U.S.C. § 173(d). Employers and unions may, however, limit the discretion of the arbitrator, as the Postal Service and the APWU have done in article 15.4.A.(6) of their National Agreement, which states:

> [a]ll decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

On questions of arbitrability article 15.4.-A.(9) states:

[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator. The arbitrator's determination shall be final and binding.

 To encourage the private resolution of labor disputes, courts pay considerable deference to the merits of an arbitrator's award. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). But this court will not enforce an arbitrator's decision on the merits if the arbitrator has exceeded his authority under the collective bargaining agreement. *Delta Queen Steamboat Co. v. District 2 Marine Eng'rs. Beneficial Ass'n,* 889 F.2d 599, 602 (5th Cir.1989), *cert. denied,* ⎯ U.S. ⎯, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990); *Container Prods., Inc. v. United Steelworkers,* 873 F.2d 818, 820 (5th Cir.1989). We have stated that "[w]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen,* 889 F.2d at 602 The crucial issue in this case is whether the arbitrator had jurisdiction to hear Smith's grievance.

### II

The Postal Service argues that the National Agreement unambiguously denies a probationary employee access to the grievance procedure to challenge his dismissal from employment. Article 12.1.A. states in relevant part:

> The probationary period for a new employee shall be ninety (90) days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these *probationary employees shall not be permitted access to the grievance procedure in relation thereto.*

(emphasis added).

The APWU, on the other hand, argues that the Agreement also requires the employer to adhere to the provisions of FECA and to promulgate binding regulations

---

1. FECA covers postal employees. *See* 39 U.S.C. § 1005(c) (applying FECA to the Postal Service).

which comply with that act. Article 21.4 states:

> Employees covered by this Agreement shall be covered by subchapter 1 of Chapter 81 of Title 5, and any amendments thereto, relating to compensation for work injuries. The employer will promulgate appropriate regulations which comply with applicable regulations of the Office of Workers' Compensation Programs and any amendments thereto.

The employer's regulations promulgated pursuant to Article 21 of the Agreement are included in Part 540, Injury Compensation Program, of the Postal Service Employee and Labor Relations Manual (ELM). After declaring that the "USPS has legal responsibilities to employees with job-related disabilities under 5 USC 8151 and the Office of Personnel Management's regulations," section 546 of Part 540, Reemployment of Employees Injured on Duty, states:

> When an employee fully overcomes the injury or disability within one year after the commencement of compensation payments from OWCP ... the USPS must give an employee the right to resume employment in the former or equivalent position.

The union contends that while article 21 requires these provisions, article 19 also incorporates them by reference into the National Agreement. Article 19 states:

> Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours, or working conditions ... shall contain nothing that conflicts with this Agreement.[2]

The Postal Service acknowledges that FECA applies to probationary employees and that when such employees suffer a work-related injury and are discharged because of that injury they have a right to request reinstatement when they recover. *See* 5 U.S.C. § 8151(b)(1). To enforce such rights, however, probationary employees, argues the Postal Service, have recourse to the Merit System Protection Board (MSPB), *see* 5 C.F.R. § 353.401, but not, under the terms of the National Agreement, to arbitration.

## III

We agree with the Postal Service that even when, as in this case, a probationary employee alleges that his termination violates articles 19 and 21 of the National Agreement, article 12 of that Agreement clearly denies probationary employees any right to resort to grievance and arbitration procedures. Non-probationary (permanent) employees alleging similar violations clearly have recourse to arbitration, but the Agreement expressly denies probationary employees that right. Such is the Agreement for which the parties bargained.

The language of article 12 is, as the district court declared, "clear and unequivocal": "The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." Articles 19 and 21 grant, as the arbitrator found, all employees, both probationary and permanent, certain rights and benefits. In so finding, the arbitrator, as the district court stated, merely determined that a probationary employee can assert rights pursuant to section 546 of the ELM. He did not expressly find, nor could he have found, that articles 19 and 21 confer on probationary employees the right to arbitration on issues concerning these articles that article 12 expressly denies them. *See American Postal Workers Union v. United States Postal Service*, C.A. No. 85–2154,

---

**2.** Although article 19 states that nothing in the handbooks, manuals and regulations shall conflict with the Agreement, it does not specifically state that the Agreement incorporates these texts. Thomas A. Neill, Director of Industrial Relations for the APWU, whose duties include negotiation of the National Agreement and administration of the grievance procedure, states in his "declaration" that "[t]he handbooks and manuals are applied in labor relations between the APWU and USPS as part of the National Agreement." These texts, Neill adds, are incorporated by reference into the Agreement and arbitrators routinely interpret them in deciding grievance arbitration cases. The Postal Service does not dispute Neill's sworn declaration.

slip opinion (D.D.C. Nov. 27, 1989) (although article 2 of National Agreement expressly requires arbitration of disputes arising under that article, probationary employees have no recourse to arbitration because article 12 denies them that right). When a specific and a general provision of an agreement conflict, well-established principles of construction require that the specific trump the general provision.[3] We follow that principle here.

■ The same principle of construction also applies to the conflict between article 12 and article 15.A.4.9, which states that the arbitrator's decisions as to arbitrability are final and binding. Article 12 does not permit the arbitrator ever to reach the question of arbitrability when the dismissal at issue involves probationary employees. When the arbitrator does so, he clearly exceeds his authority under the National Agreement.

■ The union insists that a probationary employee dismissed while on compensable leave is not a probationary employee. We disagree. Leave for injury suspends the running of the clock on a probationary period, but it does not alter the employee's status as a probationary employee. His sufferings do not apotheosize his probationary status into a more desirable one. Indeed, in ruling that Smith should return as a probationary employee, the arbitrator acknowledged, at least inferentially, that the employee is still on probationary status.

We note that to deny a probationary employee the right to arbitration after he is dismissed during compensable leave is not to deprive him of all remedies for not being reinstated after recovering from compensable injury. If he can show that his firing resulted from a compensable injury or was substantially related to one, a probationary employee is entitled to appeal a denial of reinstatement to the MSPB. *Roche v. United States Postal Serv.*, 828 F.2d 1555, 1557 (Fed.Cir.1987); *see also Rishavy v. United States Postal Serv.*, 35 M.S.P.R. 528 (1987).

Our decision does not conflict with those decisions which hold, *Rishavy*, 35 M.S.P.R. 528 (Nov. 19, 1987), or imply, *see Roche*, 828 F.2d 1555 (Fed.Cir.1987), that probationary status has no bearing on an employee's restoration rights. In both *Roche* and *Rishavy* the employees successfully argued that their probationary status did not curtail their right to appeal to the Merit System Protection Board the Postal Service's denial of restoration rights after they had recovered from compensable injuries. Neither of these cases, however, sheds any light on the issue of arbitrability which confronts this court. These decisions merely indicate that a probationary employee terminated because of a compensable injury is not bereft of a remedy for an infringement of a statutory right.

## IV

In conclusion, we agree with the district court that Smith was a probationary em-

---

**3.** Had the parties to the Agreement intended to confer on probationary employees the right to arbitrate matters concerning compensable leave, they could have specifically included that right. Given the presence at the bargaining table of union negotiators possessing the experience and knowledge of Thomas A. Neill, the Director of Industrial Relations for the APWU, the express and unambiguous exclusion in article 12 of probationary employees from the grievance procedure and, therefore, from arbitration suggests that the parties anticipated that a probationary employee's termination which is causally connected to his compensable injury would not be a subject for arbitration. *See American Postal Workers Union, AFL–CIO v. United States Postal Service*, 755 F.Supp. 1076 (D.D.C.1989) (although article 2 of National Agreement expressly requires arbitration of disputes arising under that article, probationary employees have no recourse to arbitration because article 12 denies them that right). To argue otherwise is disingenuous.

Neill administers the grievance procedure. He is "responsible for disseminating information and directions to APWU officers nationwide concerning the National Agreement, its meaning, and its application." As director he has reviewed "thousands of arbitration awards in cases arbitrated under the National Agreement." Before becoming director, Neill was a local and then a national officer of the union and handled "thousands of grievances filed under the National Agreement" in Texas and Louisiana.

ployee and that under article 12 of the National Agreement, a probationary employee is not permitted access to the grievance procedure in relation to a termination within the probationary period, and thus is not entitled to arbitration. Consequently, in ordering Smith reinstated as a probationary employee, the arbitrator exceeded his authority under the clear and unequivocal language of the National Agreement. The decision of the district court is, therefore, AFFIRMED.