In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4204

RODNEY HARRELL,

*Plaintiff-Appellant,*

*v.*

UNITED STATES POSTAL SERVICE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 2056—**Michael P. McCuskey**, *Chief Judge*.

———————

ARGUED SEPTEMBER 24, 2004—DECIDED JULY 19, 2005
REARGUED DECEMBER 9, 2005—DECIDED MAY 4, 2006

———————

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Rodney Harrell filed this action against his former employer, the United States Postal Service ("USPS" or "Postal Service"), alleging violations of the Family and Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. § 2601 et seq. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the Postal Service. Mr. Harrell appealed. This panel initially affirmed in part and reversed in part the judgment of the district court. On the petition of the

Postal Service, with the United States Department of Labor ("Department") as amicus curiae, the panel granted rehearing. For the reasons set forth in the following opinion, we affirm the judgment of the district court in its entirety.

# I

## BACKGROUND

### A. Facts

Mr. Harrell began working for the Postal Service in 1984 as a clerk at the Decatur, Illinois post office. He was a member of a collective bargaining unit represented by the American Postal Workers Union, AFL-CIO ("APWU" or "Union"), and he was covered by a national collective bargaining agreement between the APWU and the Postal Service known as the National Agreement.

On February 2, 2000, Mr. Harrell felt ill and left work early. On February 10, 2000, he submitted to the Postal Service a medical form completed by his physician, Dr. Robert Smith, which certified that his absence was due to fatigue, stress, sleep disturbance and difficulty concentrating. Dr. Smith indicated that the health problems had begun on February 2 and probably would last four weeks. On February 23, 2000, Mr. Harrell submitted a second health certification, in which Dr. Smith estimated that he would be able to resume work on March 6, 2000.

The Postal Service responded by a letter dated February 23, 2000, and advised Mr. Harrell that, according to postal regulations, in order to return to work,

> (1) You must submit medical documentation outlining the nature and treatment of the illness or injury, the

> inclusive dates you were unable to work, and any medicines you are taking. This medical information is to be reviewed by the Postal Medical Officer.
>
> (2) You may be required to be examined by the Postal Medical Officer after your documentation is reviewed. The bill for this release for work exam will be paid by the Postal Service.

R.27, Ex.A, Ex.3. Mr. Harrell maintains that he did not receive this letter until March 7, 2000.

Mr. Harrell attempted to return to his job on March 6. However, Jane Cussins, the Decatur post office supervisor, informed him that he had not been cleared to return to work; at that time she explained the applicable postal regulations to Mr. Harrell. In order to facilitate the clearance process, Cussins made him an appointment for an examination by the USPS-contract physician for later that morning. Mr. Harrell went to the physician's office, but he refused to consent to an examination because he believed that he already had provided the Postal Service with sufficient medical information to entitle him, under the FMLA, to return to work. Mr. Harrell returned to Cussins' office, and she told him that she would fax the documentation submitted by Mr. Harrell to the postal nurse for review.

The postal nurse reviewed the February 10 and February 22 certifications submitted by Mr. Harrell, and she concluded that the information was insufficient to clear him for duty. Specifically, the forms had no information about continuing medications, restrictions on Mr. Harrell's ability to work or when he had been declared fit to return to work. On March 10, 2000, the postal nurse called Mr. Harrell to obtain his physician's contact information; he refused to provide the information and expressly stated that he did not

want her to contact his physician. Two weeks later, nonetheless, the postal nurse faxed a return-to-work form to Dr. Smith's office. The office refused to release any medical information without Mr. Harrell's consent.

In the meantime, the Postal Service mailed Mr. Harrell a letter dated March 9, 2000, reminding him that

> employees returning to duty after 21 days or more of absence due to illness or serious injury require medical certification. This certification must include evidence of your ability to return to work, with or without limitations. A medical officer or contract physician evaluates the medical report and makes a medical assessment as to your ability to return to work before you are allowed to return.

R.27, Ex.A, Ex.5. The letter also explained that the forms prepared by Dr. Smith, which had explained Mr. Harrell's need for leave, were insufficient to clear him for duty because they did not describe the nature of treatment he received or list any medications he was taking. Finally, the letter advised that, if he did not present appropriate documentation within five days, he would be considered absent without leave and subject to discipline, including removal. This letter was sent by both regular and certified mail.

On March 15, 2000, having not received a reply from Mr. Harrell, the Postal Service mailed him another letter (also via regular and certified mail) which declared him absent without leave and scheduled a predisciplinary hearing for March 17. The letter advised that failure to appear could result in disciplinary action, including removal. On March 22, the Postal Service sent Mr. Harrell a notice of removal.

On March 21, 2000, Mr. Harrell sent a letter to the Postal Service. He maintained that he had not received the March 9 and March 15 warning letters until March 20. He also asserted that the medical documentation he had provided in order to qualify his absence as FMLA leave was sufficient by law to entitle him to return to work. Despite this belief, Mr. Harrell returned to Dr. Smith and obtained a return-to-work certification. The certification, dated March 23, 2000, stated that Mr. Harrell was "fit to return to work without restrictions." R.27, Ex.A, Ex.7.

The Postal Service responded to Mr. Harrell by letter on March 31, 2000, which advised:

> You were notified in writing on February 23, 2000, that this medical documentation had to include the nature of treatment of your illness and any medicines you were taking. You have again failed to provide medical documentation adequate for the Postal Medical Officer to make a determination as to your ability to return to work.
>
> In conclusion, we want the opportunity to review medical documentation from your attending physician that includes all the required information. We have scheduled the following appointment for you to be examined by the Postal contract physician.

R.22, Ex.6, Ex.10. Mr. Harrell again refused to provide further information or to submit to an examination. By letter dated April 27, 2000, the Postal Service terminated his employment.

**B. District Court Proceedings**

Mr. Harrell alleged that the Postal Service violated the FMLA in five ways: (1) failing to restore him to work after he presented a medical clearance; (2) requiring him to submit to a medical examination by a USPS-contract physician prior to allowing him to return to work; (3) terminating his employment because he took FMLA leave; (4) contacting his physician without his consent; and (5) failing to provide him with notice of the Postal Service's return-to-work requirements and the consequences of not complying with those requirements. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of the Postal Service.

**1.**

With respect to Mr. Harrell's first three claims, the Postal Service asserted that the conditions it had placed on his return to work were permitted by the National Agreement that incorporated by reference the postal handbooks and manuals governing employees' leave. Specifically, the Postal Service contended that any return-to-work certification requirements included in a collective bargaining agreement ("CBA") take precedence over the FMLA's return-to-work provisions under 29 U.S.C. § 2614(a)(4), which provides that employers may impose

> a uniformly applied practice or policy that requires each employee to receive certification from the health care provider of the employee that the employee is able to resume work, *except that nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees.*

*Id*. (emphasis added).

Mr. Harrell contended that the Postal Service was pre-
cluded from arguing that the National Agreement incorpo-
rated the postal regulations governing return to work after
FMLA leave because the Postal Service previously made,
and lost, the same argument in a different case. The district
court, however, determined that *United States v. Mendoza*,
464 U.S. 154, 162 (1984), did not allow Mr. Harrell to invoke
the doctrine of collateral estoppel offensively against the
United States based on a litigation to which he was not a
party.

The district court then concluded that the postal hand-
books and manuals are part of the National Agreement.
It further determined that, because the postal regulations
had the force of a valid collective bargaining agreement,
those regulations, and not the FMLA's provisions, con-
trolled Mr. Harrell's right to reinstatement. In addition,
the district court found that the postal regulations justi-
fied the Postal Service's requirement that Mr. Harrell
provide more detailed medical documentation from his
health care provider or submit to a medical examination
by a USPS-contract physician. Moreover, the district
court believed that such requirements did not diminish
any substantive right provided by the FMLA. The court took
the view that

> USPS employees always have the right guaranteed
> by the FMLA to be restored to their employment
> following FMLA leave. The agreement and the USPS
> regulations merely alter the procedure by which em-
> ployees go about being restored.
>
> It is possible to imagine a situation in which altering
> the procedure attached to a certain substantive right
> would in essence impinge on or prohibit the exercise
> of that right. This case does not present such a situation,

however, given the modest and seemingly simple certification process the USPS imposes for employees who exceed 21 days of FMLA leave. Cussins was able to make Harrell an appointment with the contract doctor on the very morning he sought to return to work. Alternatively, the [postal nurse] needed only two single-sided forms filled out by a doctor, noting Harrell's condition, treatment, medication, and work restrictions. Neither process is so onerous that it effectively abrogates Harrell's right of restoration under the FMLA.

R.41 at 9.

### 2.

Next, the district court granted the Postal Service summary judgment on the claim that it had failed to provide Mr. Harrell with adequate notice of the requirements for returning to work and of the consequences for not meeting those requirements. *See* 29 C.F.R. § 825.310(c). The district court pointed to Mr. Harrell's "deposition testimony in which he admits that he was aware of the USPS regulations concerning returning to work following an absence of more than 21 days." R.41 at 11. The court noted, moreover, that Mr. Harrell was informed of the return-to-work requirements by the letters from the Postal Service and by Cussins, to whom he had spoken when he attempted to return to work.

### 3.

Finally, the district court granted the Postal Service summary judgment on Mr. Harrell's claim that the Postal Service had violated the FMLA by contacting his personal

physician without his consent. *See* 29 C.F.R. § 825.310(c). Although the district court found that a violation had occurred, it dismissed the claim because Mr. Harrell had suffered no injury in that Dr. Smith's office did not release any information that contributed to his termination.

## II

## DISCUSSION

### A.  Standard of Review

We review a district court's grant or denial of summary judgment de novo. *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000). In doing so, we construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B.  Failure to Return to Work

Congress enacted the FMLA in order to assist workers in meeting the needs of their families and the demands of their jobs. *See Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir. 1997). The statute responded to the perception that

> [p]rivate sector practices and government policies have failed to adequately respond to recent economic and social changes that have intensified the tensions between work and family. This failure continues to

impose a heavy burden on families, employees, employ-
ers and the broader society. [This legislation] provides a
sensible response to the growing conflict between work
and family by establishing a right to unpaid family and
medical leave for all workers covered under the act.

S. Rep. No. 103-3, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N.
2, 6 ("S. Rep. 103-3"). The FMLA makes available to
eligible employees up to twelve weeks of leave during any
twelve-month period for one or more of the following
reasons: (1) the birth of the employee's child; (2) the place-
ment of a child with the employee for adoption or foster
care; (3) the care of the employee's child, spouse or parent
who has a serious health condition; and (4) the inability of
the employee himself to perform the functions of his position
because of a serious health condition. 29 U.S.C. § 2612(a)(1).
At the conclusion of a qualified-leave period, the employee
is entitled to return to his former position of employment, or
to an equivalent one, with the same terms and benefits. *Id*.
§ 2614(a)(1);[1] *see also* 29 C.F.R. § 825.214(a). To protect these

---

[1]  Section 2614(a)(1) provides:

   (1) In general

      Except as provided in subsection (b) of this section, any
      eligible employee who takes leave under section 2612 of
      this title for the intended purpose of the leave shall be
      entitled, on return from such leave—

      (A) to be restored by the employer to the position of
      employment held by the employee when the leave
      commenced; or

      (B) to be restored to an equivalent position with equiva-
      lent employment benefits, pay, and other terms and
                                                    (continued...)

rights, the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). In this case, Mr. Harrell contends that the Postal Service violated his rights under the FMLA by refusing to return him to his position after his physician provided an unqualified certification of his fitness to return to duty.

An employee's right to return to work after taking FMLA leave is not unlimited. The Act seeks to accomplish its purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3); *see also* 29 C.F.R. § 825.101(b) ("The enactment of the FMLA was predicated on two fundamental concerns—the needs of the American workforce, and the development of high-performance organizations."). An employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). An employee returning from FMLA leave also is not entitled to restoration if he cannot perform the essential functions of the position or an equivalent position.[2] 29 C.F.R.

---

[1] (...continued)
         conditions of employment.

29 U.S.C. § 2614(a)(1).

[2] The Department of Labor regulations discuss an employee's right to restoration:

(continued...)

§ 825.214(b).

In addition, the Act permits an employer, as a condition of restoring employees who take FMLA leave, to have a policy that requires all such employees to obtain medical certification from their personal health care provider indicating that the employee is able to resume work. 29 U.S.C. § 2614(a)(4). The Act provides that nothing in § 2614(a)(4) "shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of employees." *Id.* The interplay between the FMLA's return-to-work provisions and a CBA that governs the return of employees who take leave due to a serious health condition is discussed in the statute's accompanying regulations:

> (a) As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable

---

(...continued)

> (a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions or employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence. *See also* § 825.106(e) for the obligations of joint employers.

> (b) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA). *See* § 825.702.

29 C.F.R. § 825.214.

to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work.

(b) If State or local law or the terms of a collective bargaining agreement govern an employee's return to work, those provisions shall be applied. Similarly, requirements under the Americans with Disabilities Act (ADA) that any return-to-work physical be job-related and consistent with business necessity apply. . . .

(c) An employer may seek fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification itself need only be a simple statement of an employee's ability to return to work. A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be acquired, and clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made.

29 C.F.R. § 825.310(a)-(c).

In the present case, the Postal Service maintains that it had the right, under the FMLA, to require Mr. Harrell to provide sufficient medical documentation from his health care provider or to be cleared for duty by a USPS-contract physician, as a condition of returning to work. In the Postal

Service's view it appropriately employed, under 29 U.S.C. § 2614(a)(4), a uniform practice requiring employees to provide a fitness-for-duty certification from their personal health care provider; and, although the accompanying regulations provide that this certification need only be a simple statement of the employee's ability to work, *see* 29 C.F.R. § 825.310(c), the FMLA's certification provisions do not supersede a valid collective bargaining agreement that governs return to work for such employees, *see* 29 U.S.C. § 2614(a)(4); 29 C.F.R. § 825.310(b).

Mr. Harrell challenges this theory on four grounds: (1) collateral estoppel forecloses the Postal Service from arguing that the terms of the National Agreement allow it to limit postal employees' right to return to work after FMLA leave; (2) the postal handbooks and manuals are not part of the National Agreement; (3) the postal return-to-work provisions are invalid because they diminish a substantive right afforded by the FMLA; and (4) the requirements imposed by the Postal Service in this case contravened the postal return-to-work provisions. We shall address these issues in turn.

### 1. Collateral Estoppel

Mr. Harrell first contends that the Postal Service is precluded from arguing that its handbooks and manuals are negotiated parts of the National Agreement because it raised and lost this argument in *Routes v. Henderson*, 58 F. Supp. 2d 959, 994 (S.D. Ind. 1999). The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *Mendoza*, 464 U.S. at 158. The "offensive use of collateral estoppel occurs when

a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *Id*. at 159 n.4. Mr. Harrell seeks to invoke nonmutual collateral estoppel, which occurs when the plaintiff was a nonparty to the prior lawsuit. *Id*. The district court determined that applying this doctrine against the Postal Service was not appropriate. We review a district court's decision whether to apply offensive collateral estoppel for an abuse of discretion. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

As the district court recognized, the Supreme Court has established that nonmutual offensive collateral estoppel does not extend to litigation against the United States. *Mendoza*, 464 U.S. at 162. The United States differs from private litigants in that its litigation is geographically broad and often involves issues of national significance. *Id*. at 159-60. Among other concerns expressed by the Court, precluding the United States from relitigating issues against different parties would "thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue" and would "deprive th[e] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before" it grants certiorari. *Id*. at 160.

Mr. Harrell submits that *Mendoza* does not apply in this case because Congress has placed the Postal Service on the same footing as a private litigant by authorizing it to "sue and be sued." 39 U.S.C. § 401. Mr. Harrell reads too much into this waiver of immunity: That the Postal Service is amenable to the judicial process does not "change the fact that the party being sued is still the federal government." *In re Young*, 869 F.2d 158, 159 (2d Cir. 1989) (per curiam). Indeed, Congress has provided that the Postal Service "is

part of the executive branch of government, that its employees are part of the federal civil service, and that it possesses certain powers unique to governmental entities, such as the authority to exercise the power of eminent domain in the name of the United States." *Baker v. Runyon*, 114 F.3d 668, 670-71 (7th Cir. 1997) (citing 39 U.S.C. §§ 201, 1001(b) & 401(9)). The "sue and be sued" provision, if anything, indicates that "waiver of sovereign immunity is necessary solely because the Postal Service is a government agency." *Id*. (citing *Western Sec. Co. v. Derwinski*, 937 F.2d 1276, 1280 (7th Cir. 1991) (stating that the "sue or be sued" clause "permit[s] the suit to go forward notwithstanding that it is a suit against a federal agency")); *see also United States Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004) ("While Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status."). Accordingly, we conclude that the district court did not abuse its discretion in concluding that the use of collateral estoppel was not appropriate in this case, and, thus, the Postal Service may argue that the National Agreement incorporates the postal handbooks and manuals that relate to employees' return to work.

### 2. Incorporation

The premise underlying the Postal Service's position in this case is that the National Agreement incorporates by reference the regulations in the postal handbooks and manuals that govern an employee's return to work after taking leave for a serious health condition. The Postal Service relies upon Article 19 of the agreement, which reads:

> Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate

> to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable. This includes, but is not limited to, the Postal Service Manual and the F-21, Timekeeper's instructions.

R.27, Ex.I, Ex.1 at 123.

Mr. Harrell argues that this paragraph is too vague and general to incorporate the contents of the postal handbooks and manuals into the collective bargaining agreement. He also relies on the declaration of Greg Bell, the director of industrial relations for the APWU, who attests that the postal handbooks and manuals are not part of the National Agreement because they were promulgated unilaterally by the Postal Service, rather than through any collective bargaining between the Postal Service and the APWU. *See* R.27, Ex.I at ¶ 10.

Other courts of appeals, by contrast, have concluded in analogous contexts that the provisions contained in the postal handbooks and manuals that affect working conditions are incorporated by reference into the National Agreement. *See Woodman v. Runyon*, 132 F.3d 1330, 1334 (10th Cir. 1997) (noting that the postal manual governing injury compensation was part of the National Agreement because "Article 19 . . . incorporates those parts of all USPS handbooks, manuals and published regulations which directly relate to wages, hours, or working conditions"); *Kroll v. United States*, 58 F.3d 1087, 1091 (6th Cir. 1995) (concluding that Postal Service employee suggestion program was incorporated into the National Agreement through the postal manual because Article 19 "incorporates by reference all

parts of postal handbooks, manuals, and regulations that 'directly relate to wages, hours, or working conditions' ").

Indeed, the APWU itself has argued in other litigation that Article 19 incorporates the postal handbooks and manuals into the National Agreement. For instance, in *United States Postal Service v. American Postal Workers Union*, 922 F.2d 256 (5th Cir. 1991), the Fifth Circuit noted that,

> [a]lthough article 19 states that nothing in the hand-books, manuals and regulations shall conflict with the Agreement, it does not specifically state that the Agreement incorporates these texts. Thomas A. Neill, Director of Industrial Relations for the APWU, whose duties include negotiation of the National Agreement and administration of the grievance procedure, states in his "declaration" that "[t]he handbooks and manuals are applied in labor relations between the APWU and USPS as part of the National Agreement." These texts, Neill adds, are incorporated by reference into the Agreement and arbitrators routinely interpret them in deciding grievance arbitration cases. The Postal Service does not dispute Neill's sworn declaration.

*Id.* at 259 n.2.

In light of the fact that both parties to the National Agreement have maintained previously that the postal handbooks and manual affecting working conditions are incorporated by reference into that agreement, Mr. Harrell stands in a weak position to assert otherwise. We agree with our sister circuits that Article 19 is sufficient to incorporate the postal handbooks and manuals relating to wages, hours or working conditions into the National Agreement. Certainly, the postal handbooks and manuals that govern an employee's return to work after an extended absence relate to wages, hours or working conditions.

### 3. Diminishment of FMLA Rights

Mr. Harrell next contends that, even if the postal return-to-work regulations are part of a valid collective bargaining agreement, the Postal Service was not allowed to impose any condition on his return that is more stringent than what is specifically allowed by the FMLA, and, by doing so, the Postal Service violated rights protected by the FMLA. The Postal Service takes the opposite view. It maintains that the FMLA allows for a more stringent return-to-work certification if required by state law or if set forth in a CBA. Thus we arrive at the pivotal issue in this case: Whether the Postal Service can rely upon return-to-work regulations incorporated into a valid collective bargaining agreement to impose requirements on employees that are more burdensome than what is set forth in the statute. To resolve this issue, we begin with the language of the statute, specifically 29 U.S.C. §§ 2614(a)(4) and 2652. If the intent of Congress, as expressed in the language of the statute, is clear with respect to this issue, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). However, "if the statute is silent or ambiguous with respect to the specific issue," the court must defer to the agency's answer if it "is based on a permissible construction of the statute." *Id.* at 843. Generally speaking, an agency's interpretation of a statute that it administers is "permissible" if it is "reasonable." *Id.* at 845.

Section 2614(a)(4) permits employers to impose, as a condition of returning to work,

> a uniformly applied practice or policy that requires each employee to receive certification from the health care provider of the employee that the employee is able to

> resume work, except that nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees.

29 U.S.C. § 2614(a)(4). The legislative history for this section notes that the last phrase "clarifies that [§ 2614(a)(4)] was not meant to supersede other valid State or local laws or collective bargaining agreement that, for reasons such as public health, might affect the medical certification required for the return to work of an employee who had been on medical leave." S. Rep. 103-3 at 32.

Section 2652, in turn, reads:

> (a) More protective
>
> Nothing in this Act or any amendment made by this Act shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act or any amendment made by this Act.
>
> (b) Less protective
>
> The rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan.

29 U.S.C. § 2652. The legislative history to this section adds that "[subsection (a)] specifies that employees must continue to comply with collective bargaining agreements or employment benefit plans providing greater benefits than the act. Conversely, [subsection (b)] makes clear that rights under the act cannot be taken away to collective bargaining or employer plans." S. Rep. 103-3 at 38; *see also id*. at 47 (ex-

plaining that under § 2652 nothing in the FMLA "shall diminish an employer's obligation under a collective bargaining agreement or employment benefit plan to provide greater leave rights nor may the rights provided under this title be diminished by such agreement or plan").

As noted above, Mr. Harrell believes that the Postal Service's insistence on a detailed return-to-work statement violated the FMLA. He asserts that, although the Postal Service was allowed to have a uniform fitness certification policy under 29 U.S.C. § 2614(a)(4), this provision is limited by the language of 29 U.S.C. § 2652(b) which provides that "[t]he rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan." Therefore, as these provisions apply to his case, Mr. Harrell submits that, because Dr. Smith cleared him for work without restrictions, the Postal Service was not authorized to impose a more stringent certification requirement, even if such a requirement was part of the governing collective bargaining agreement.

The Postal Service and the Department of Labor urge a different interpretation of these provisions. They maintain that § 2614(a)(4), with its deference to "a valid State or local law or a collective bargaining agreement," defines the "right" to return to work as guaranteed by the FMLA. The Postal Service goes on to explain that,

> [b]ecause an employee has no right under the Act to circumvent a collective bargaining provision governing his return to work, applying section 2614 to require additional certification measures does not "diminish" any "right established for employees under th[e] Act," and therefore does not contravene section 2652.

Rehearing Pet. at 11.

Both parties urge that we need not look beyond the statutory language to resolve the question at hand— whether a CBA can impose a more stringent return-to-work requirement than a simple certification by the employee's own physician. We do not believe this to be the case. Here, § 2614 provides that an employer may have a certification requirement, but further provides that "nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees"; § 2652 states that nothing in the Act "shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement . . . that provides greater family or medical leave rights to employees than the rights established under this Act" and further states that rights provided by the FMLA "shall not be diminished by any collective bargaining agreement or any employment benefit program or plan."

There are two possible ways to reconcile these provisions. The first is the interpretation urged by Mr. Harrell—that a CBA can provide greater, but not fewer, rights to employees. This interpretation, however, renders the last clause of § 2614(a)(4) superfluous, a result that we usually try to avoid. *See, e.g.*, *United States v. Alvarenga-Silva*, 324 F.3d 884, 887 (7th Cir. 2003) ("Courts should avoid statutory constructions that render another part of the same provision superfluous."). The second possible interpretation—the one urged by the Postal Service—is to read § 2614(a)(4) as an exception to the general rule set forth in § 2652. Such a reading is consonant with general canons of statutory interpretation, *see United States v. Salerno*, 108 F.3d 730, 737 (7th Cir. 1997) (describing the "cannon [sic] of statutory interpretation that a more specific statutory provision takes precedence over

a more general provision"); however, Congress' intent to limit the operation of § 2652 with respect to return-to-work provisions could have been made clearer through the use of a cross-reference to § 2614(a)(4). Given the short-comings with each interpretation, we are not able to conclude that Congress *clearly* addressed the question at issue through the statutory language. We therefore may turn to the interpretive regulations to resolve the issue.

*Chevron* instructs that we must defer to the reasonable interpretation of an agency tasked with administering the statute. Whether an interpretation is reasonable involves a two-step inquiry. The first step requires that the court identify the agency's position on the specific issue. The second step requires a determination of whether the agency's position is a principled one. *Chevron*, 467 U.S. at 844.

Here, Mr. Harrell maintains that the interpretation of § 2614(a)(4) set forth in the Department of Labor's regulation is no more than a restatement of the language of the statute and, therefore, is not worthy of deference. Although such an argument does find support in recent Supreme Court case law,[3] we find it unpersuasive with respect to the regulation at issue. It is true that part of the implementing regulation, 29 C.F.R. § 825.310,[4] follows closely the language of the statute; however, the regulation goes beyond the mere recitation of the statutory language and speaks to the issue

---

[3] *See Gonzales v. Oregon*, 126 S. Ct. 904, 915 (2006) (rejecting the Government's argument that an interpretive rule was worthy of deference under *Auer v. Robbins*, 519 U.S. 452 (1997), in part because "the underlying regulation does little more than restate the terms of the statute itself").

[4] The relevant sections of 29 C.F.R. § 825.310 are set forth supra at 13.

presented in this case. First, the title of the regulation sets forth the question that the regulation purports to answer: "Under what circumstances may an employer require that an employee submit a medical certification that the employee is able (or unable) to return to work (i.e., a 'fitness-for-duty' report)?" 29 C.F.R. § 825.310. Subsection (a) then states the general proposition that, as a condition of restoring an employee to his or her position after FMLA leave, "an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees . . . who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work." 29 C.F.R. § 825.310(a). Subsection (b) speaks more directly to the situation presented here; it states:

> (b) *If State or local law or the terms of a collective bargaining agreement govern an employee's return to work, those provisions shall be applied.* Similarly, requirements under the Americans with Disabilities Act (ADA) that any return-to-work physical be job-related and consistent with business necessity apply. For example, an attorney could not be required to submit to a medical examination or inquiry just because her leg had been amputated. The essential functions of an attorney's job do not require use of both legs; therefore such an inquiry would not be job related. An employer may require a warehouse laborer, whose back impairment affects the ability to lift, to be examined by an orthopedist, but may not require this employee to submit to an HIV test where the test is not related to either the essential functions of his/her job or to his/her impairment.

29 C.F.R. § 825.310(b) (emphasis added). Not only does subsection (b) clearly state that a CBA takes precedence over

the statutory requirements, the examples that follow illustrate that the Department of Labor does not believe that return-to-work requirements found in a CBA only can provide employees with greater protections than the statutory language. The last example discussing the warehouse laborer is particularly telling: A CBA that provided only greater rights to employees could not require a warehouse laborer, as a condition of returning to work, to be examined by an orthopedist; if the employee had obtained a return-to-work release from his general practitioner, that release, without more, would suffice under the statutory provisions of the FMLA. Thus subsection (b) not only provides for compliance with a CBA, it also indicates that the CBA may impose more stringent return-to-work requirements on the employee than those set forth in the statute.[5]

Having identified the agency's answer to the question,[6] the

---

[5] Subsection (c) then goes on to describe the statutory protections set forth in the act for returning to work—those protections that are applied in the event subsection (b) is inapplicable. *See* 29 C.F.R. § 825.310(c), supra at 13.

[6] A Department of Labor Opinion Letter, Opinion Letter FMLA-113, further elucidates the Department's position vis-a-vis CBAs and establishes that the Department's position has remained consistent over time. The letter states:

How FMLA's certification provisions interact with the terms of a CBA that govern an employee's reinstatement is specifically discussed in § 825.310(b) of the regulations. If the terms of the CBA, for instance, require a fitness-for-duty examination in addition to a return-to-work certification, then those terms apply with certain conditions. The FMLA, which has adopted the guidelines of the Americans with Disabilities Act (ADA), requires that any fitness-for-duty examination as

(continued...)

last inquiry is whether this interpretation is a reasonable one and, as a result, is entitled to deference from the courts. We believe that this final requirement also is met. First, there is support in the legislative history for this interpretation. As noted above, the portion of the Senate report that discusses § 2614(a)(4) states that the language of § 2614(a)(4)

> clarifies that section 104(a)(4) was not meant to super-sede other valid State or local laws or collective bargain-ing agreement, that, for reasons such as public health, might affect the medical certification required for the return to work of an employee who had been on medical leave. For example, section 104(a)(4) does not supersede a State law that requires specific medical certification before the return to work of employees who have had a particular illness and who have direct contact with the public. . . .

---

[6] (...continued)

> a condition for returning to work must be job-related and consistent with business necessity.
>
>   . . . If the above-referenced return-to-work medical certifi-cation and fitness-for-duty examinations provisions in the handbook and manual are a part of the CBA as you have asked that we assume, then these provisions would apply instead of the FMLA's return-to-work certification requirements. . . .

Opinion Letter, FMLA-113 (September 11, 2000). Thus, the Department of Labor consistently has taken the position that § 2614(a)(4) means that return-to-work provisions set forth in a CBA, whether providing greater or fewer protections to employees than are explicitly set forth in the FMLA, take precedence over the statutory protections provided to employees in the Act.

S. Rep. 103-3, at 31 (1993). Additionally, the Department's interpretation avoids a construction of the statute that would render the last clause of § 2614(a)(4) superfluous. If that clause were interpreted to give CBA's precedence over the statutory protections only if those protections were greater than that provided in the Act, then § 2614(a)(4) and § 2652 would provide the same guarantees. Finally, the Department's interpretation of § 2614 gives effect to the rule of statutory construction that specific provisions take precedence over more general provisions. Section 2652 speaks in broad terms to the protections provided to employees by the Act; § 2614(a)(4), however, addresses a very specific issue—return-to-work certifications. Thus, with respect to the specific right to which § 2614(a)(4) is addressed—returning to work upon the certification of a physician—a CBA, state statute or local ordinance, may take precedence over the statutory protections provided by other places in the Act.[7]

Because the Department of Labor's regulations reasonably interpret § 2614(a)(4) to allow a CBA to impose stricter return-to-work restrictions than those otherwise incorporated into the FMLA, we defer to that interpretation and hold that the Postal Service did not violate the FMLA when it required Mr. Harrell to comply with the return-to-work provisions set forth in the handbooks and manuals incorpo-

---

[7] Mr. Harrell cites two district court opinions, *Marrero v. Camden County Board of Social Services*, 164 F. Supp. 2d 455 (D.N.J. 2001), and *Routes v. Henderson*, 58 F. Supp. 2d 959 (S.D. Ind. 1999), that reach a different conclusion. For the reasons set forth in this section, we respectfully disagree with those courts.

rated into the National Agreement.[8]

## C. Contacting Employee's Health Care Provider

Despite Mr. Harrell's express refusal to give his consent, the postal nurse contacted his personal physician and requested additional medical information. The district court determined that this contact violated the FMLA, as provided in the statute's accompanying regulations:

> If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employer's health care provider. However, a health care provider

---

[8] Mr. Harrell also argues that the Postal Service violated its own regulations when it required that he undergo an examination by a designated physician. He claims that the return-to-work requirements do not specifically reference the portion of the employee manual dedicated to FMLA leave, and, therefore, those requirements are not meant to apply to the FMLA section. We find this argument unpersuasive. Nothing in the language of the statute or regulation suggests that a CBA's return-to-work provisions must specifically reference the FMLA or cross-reference the section of the CBA dedicated to implementing the FMLA in order to be effective.

Mr. Harrell also points to statements by Postal Service administrators, regarding the requirements for returning to work after FMLA leave, made several years prior to Mr. Harrell's illness and attempted return-to-work. However, Mr. Harrell failed to establish either that these statements represented the current administrative practice under the existing CBA or Employee Labor Relations Manual, or that he relied upon these statements in refusing to undergo an examination by the Postal Service physician.

representing the employer may contact the em-
ployee's health care provider, with the employee's
permission, for purposes of clarification and authenticity
of the medical certification.

29 C.F.R. § 825.307(a).

The rights established by the FMLA can be enforced
through civil actions. Section 2615 makes it "unlawful for
any employer to interfere with, restrain, or deny the exercise
of or the attempt to exercise, any right provided." 29 U.S.C.
§ 2615(a)(1). An employer who violates this section shall be
"liable to any eligible employee affected" for compensatory
damages and "for such equitable relief as may be appropri-
ate, including employment, reinstatement, and promotion."
*Id*. § 2617(a)(1).[9] The district court ruled that Mr. Harrell was

---

[9]   The full text of § 2617(a)(1) reads:

   (a) Civil action by employees

      (1) Liability

         Any employer who violates section 2615 of this title
         shall be liable to any eligible employee affected—

         (A) for damages equal to—

            (i) the amount of—

               (I) any wages, salary, employment benefits,
               or other compensation denied or lost to
               such employee by reason of the violation;
               or

               (II) in a case in which wages, salary, em-
               ployment benefits, or other compensation
               have not been denied or lost to the em-
               ployee, any actual monetary losses sus-
               tained by the employee as a direct result
                               (continued...)

not entitled to any damages on this claim because the violation caused him no injury: Dr. Smith's office refused to release any medical information to the postal nurse absent Mr. Harrell's consent. This conclusion is correct. Our review of the record also found no indication that any information obtained from the postal nurse's contact with Dr. Smith's office in any way compromised Mr. Harrell's return-to-work status or was a factor in the Postal Service's decision to terminate his employment. Section 2617 affords

---

(…continued)

of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1).

> no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1) (A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-90 (2002).[10] Because Mr. Harrell was not harmed by the unauthorized contact with his physician, § 2617 provides him no remedy, including equitable relief, and the district court correctly granted the Postal Service summary judgment on this claim.

## D. Notice Requirements

Finally, Mr. Harrell alleges that the Postal Service interfered with his FMLA rights by failing to provide him with

---

[10] *See also Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998) (holding that plaintiff had no claim under FMLA because she had suffered no diminution in income and incurred no costs as a result of alleged violation); *see also Cavin v. Honda of American Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003) ("Even when an employee proves that his employer violated § 2615, '§ 2617 provides no relief unless the employee has been prejudiced by the violation'" (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-90 (2002)); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999) (concluding that the FMLA does not give "an employee a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act").

timely and sufficient notice of the requirements for returning to work and of the consequences for failing to comply with those requirements. The Act's implementing regulations require that an employer must provide notice "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations," 29 C.F.R. § 825.301(b), "within a reasonable time after notice of the need for leave is given by the employee—within one or two business days if feasible," *id*. § 825.301(c). If the employer fails to provide adequate and timely notice, it "may not take action against an employee for failure to comply with any provision required to be set forth in the notice." *Id*. § 825.301(f).

The district court concluded that Mr. Harrell's claim was "belied by his deposition testimony in which he admits that he was aware of the USPS regulations concerning returning to work following an absence of more than 21 days." R.41 at 11. The court found, moreover, that, upon realizing that Mr. Harrell's leave would exceed twenty-one days, Cussins mailed to him a letter outlining in detail the return-to-work certification requirements. In addition, Mr. Harrell discussed his alternatives with Cussins when he first had attempted to return to work.

Mr. Harrell contends that the Postal Service was re-quired to inform him of his return-to-work obligations at the time he requested FMLA leave, not at the time he attempted to return to work. On February 2, and again on February 23, 2000, Mr. Harrell notified his supervisors that he might be absent for up to four weeks. The Postal Service initially advised him of its return-to-work requirements by letter dated February 23, 2000. Although, according to Mr. Harrell, he did not receive this letter until March 7 (the day after he attempted to return to work), nothing in the record suggests

that the Postal Service delayed in attempting to notify Mr. Harrell of his obligations within a reasonable time after he advised the Postal Service that he needed to take an extended absence.

Furthermore, even assuming that the Postal Service failed to provide adequate notice, Mr. Harrell was not harmed by this violation. On March 6, 2000, when Mr. Harrell attempted to return to work, he was told by Cussins what he needed to do in order to be cleared for work. By letters dated March 9 and March 15, 2000, the Postal Service reiterated to Mr. Harrell his return-to-work obligations and told him that he would be subject to removal if he failed to comply with those conditions. Then, when Mr. Harrell responded by letter on March 21, the Postal Service sent him another letter requesting an opportunity to review medical documentation from his health care provider and scheduling an appointment for him to be examined by a USPS-contract physician. Mr. Harrell again refused this request. The Postal Service did not terminate his employment until April 27, 2000.

This chronology demonstrates that Mr. Harrell had ample notice of the Postal Service's expectations and of his obligations related to returning to work. We conclude that, on this record, the district court's grant of summary judgment in favor of the Postal Service was appropriate on this claim.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*