In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 21-2139 & 22-1035

SARAH SIMON,

*Plaintiff-Appellee,*

*v.*

COOPERATIVE EDUCATIONAL SERVICE AGENCY #5,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cv-909 — **William M. Conley**, *Judge.*

———————————

ARGUED JANUARY 7, 2022 — DECIDED AUGUST 16, 2022

———————————

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* When Sarah Simon returned from medical leave, her employer, Cooperative Educational Service Agency #5, did not allow her to return to her previous position as a lead teacher at her school. Instead, it placed her in a backwater position with fewer responsibilities that required her to split her time between different schools. After a bench trial, the district court determined that Cooperative had violated the Family and Medical Leave Act and awarded

Simon declaratory relief and attorney's fees. Cooperative appealed, contending that neither declaratory relief nor attorney's fees are appropriate under the circumstances. We disagree and therefore affirm.

I

Cooperative Educational Service Agency #5 is a Wisconsin-based governmental entity that services 35 public-school districts. In July 2014, it hired Sarah Simon as an Alternative Program Lead Teacher at REACH Academy, an elementary school for children with special emotional and behavioral needs. In that role, Simon taught her assigned students, managed paraprofessionals, developed integrated education plans (IEPs), and communicated with parents, school districts, social workers, and law enforcement officials.

In October 2016, a REACH Academy student kicked a steel door into Simon's head, which caused her to suffer a concussion. Simon took FMLA-qualifying leave and was cleared to return to part-time, light-duty work on October 31, and full-time work with no restrictions on November 24. But Cooperative did not allow Simon to return to her previous position at REACH Academy because its business director and others had determined that doing so would present an "unreasonable risk." Instead, it placed her in a support position with duties resembling those of a paraprofessional. Although Simon received the same salary and benefits in her new role, it involved significantly less responsibility, independence, discretion, and management than her previous Lead Teacher position. Her work involved supporting other teachers' classrooms, required splitting time between two elementary schools, and did not include lesson planning, evaluation,

reporting, direct education, communication with students' families, input on IEPs, or assistance from paraprofessionals.

Based on this treatment, Simon sued Cooperative, alleging several FMLA violations. The district court held a bench trial on one of those claims—the FMLA interference claim based on Cooperative's failure to return Simon to an equivalent position following her leave. By trial, Simon sought only: (1) an injunction requiring Cooperative to hire her for the next available equivalent position at REACH Academy; (2) an injunction requiring Cooperative's employees to undergo additional FMLA training; and (3) a declaration that Cooperative had violated the FMLA when it failed to return Simon to an equivalent position following her leave.

After the bench trial, the district court entered a combined opinion and order in May 2021. In the opinion, the district court found that Cooperative had violated the FMLA by not returning Simon to an equivalent position following her leave. It also determined that only declaratory—rather than injunctive—relief was appropriate based on Cooperative's hiring trends, the unavailability of Simon's previous Lead Teacher role, and Simon's new job elsewhere. The court's order granted declaratory judgment and set a briefing schedule for Simon to submit a request for attorney's fees and costs. But the court did not enter a separate final judgment.

Cooperative filed its first notice of appeal based on this opinion and order. Over the next few months, the parties fully briefed the issues raised in preparation for oral argument. On December 17, 2021, the district court entered another opinion and order granting in part Simon's request for attorney's fees. On December 22, Cooperative filed a second notice of appeal based on that new opinion and order. The next day, the

district court entered a standalone final judgment granting Simon both a declaratory judgment and $59,773.62 in attorney's fees.

We held oral argument on January 7, 2022, and asked about appellate jurisdiction. That same day, Cooperative filed another notice of appeal stating that it challenged the district court's judgment on both the merits and attorney's fees.

The December 22 and January 7 notices of appeal have been consolidated into one successive appeal, which the parties have now fully briefed. Because the facts and legal arguments are adequately presented in the briefs, record, and from the January 7 oral argument, we have agreed to decide the successive appeal without another oral argument because doing so would not significantly aid the decisional process. See Fed. R. App. P. 34(a)(2)(C).

II

Before reaching the merits, we first address the messy path this appeal has taken and explain the basis for our appellate jurisdiction. See *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020). We have jurisdiction over appeals of "final decisions of the district courts of the United States." 28 U.S.C. § 1291. When Cooperative first filed its appeal in May 2021, the district court had not yet entered a judgment in a separate document and had not otherwise signaled that its decision was final.

As relevant here, Federal Rule of Civil Procedure 58(a) requires "every judgment" to "be set out in a separate document" to eliminate uncertainty about whether a district court's entry is final for appellate purposes. See *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384–85 (1978) (per curiam). If a district

court fails to issue a separate judgment, "[a] party may request that judgment be set out in a separate document as required." Fed. R. Civ. P. 58(d). We reiterate the separate-document rule's importance because it helps keep "jurisdictional lines clear." *Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1216 (7th Cir. 2021) (citation omitted).

We also remind district courts of Rule 58(e)'s requirement that the entry of judgment "[o]rdinarily … may not be delayed, nor the time for appeal extended, in order to tax costs or award fees" unless the Rule's procedures for deferring judgment until resolution of attorney's fees have been followed. Fed. R. Civ. P. 58(e). In some cases, it may be "more efficient to decide fee questions before an appeal is taken so that appeals relating to the fee award can be heard at the same time as appeals relating to the merits of the case." Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment. To choose this option, however, a district court must enter an order stating that it is doing so before a notice of appeal has been filed and become effective. Fed. R. Civ. P. 58(e). When that procedure is not followed, judgments on the merits and on attorney's fees are separately appealable. See *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emps.*, 571 U.S. 177, 179, 187 (2014).

Although the district court did not follow the prescribed Rule 58(e) procedure for consolidating the merits and attorney's fee issues into one final judgment, that's effectively what it did. It entered one final judgment on December 23, 2021, resolving both the merits and attorney's fee issues. But it's clear at this stage that the district court's decision on both the merits and the attorney's fees are final and that we have appellate jurisdiction over both appeals. See 28 U.S.C. § 1291;

Fed. R. App. P. 4(a)(7)(A)(ii) (treating judgment as entered 150 days after entry of a dispositive order that does not amount to a proper judgment). We thus proceed to consider these issues.

## III

On the merits, Cooperative contends that the district court erred by entering a declaratory judgment for two reasons. It argues first that declaratory relief is unavailable under the FMLA and, second, that Simon did not show that she was prejudiced by its FMLA violation. We review a district court's legal conclusions following a bench trial de novo and its factual findings for clear error. *Murdock & Sons Const., Inc. v. Goheen Gen. Const., Inc.*, 461 F.3d 837, 840 (7th Cir. 2006).

## A

The FMLA's "Enforcement" section permits an eligible employee to bring a civil action against her employer for violations "to recover the damages or equitable relief prescribed" by the statute. 29 U.S.C. § 2617(a)(2). The FMLA further directs that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected— … for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1)(B). The parties dispute whether a declaratory judgment falls within the FMLA's authorization for "equitable relief." If the FMLA authorizes the entry of a declaratory judgment as "equitable relief," Simon may be entitled to attorney's fees. See *Id.* § 2617(a)(3). If not, then the declaratory judgment was authorized only by the Declaratory Judgment Act, 28 U.S.C. § 2201, which does not provide for fees.

Although we have not yet addressed this issue in the FMLA context, we have when interpreting a similar statute. The Employee Retirement Income Security Act (ERISA) authorizes civil actions "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or … to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). In *Spitz v. Tepfer*, we held that a suit seeking declaratory and other relief under this subsection "was one under ERISA for appropriate equitable remedies" and noted that our precedents had "characterized suits by fiduciaries … for declaratory judgments … as actions in pursuit of 'appropriate equitable remedies' under the statute." 171 F.3d 443, 450 (7th Cir. 1999) (citing *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 580 (7th Cir. 1991) (permitting fiduciary to seek a declaration of its obligations under § 1132(a)(3)); see also *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, & Agr. Implement Workers of Am.*, 532 F.3d 583, 588 (7th Cir. 2008) ("[T]he fiduciary of an ERISA plan may sue for declaratory judgments, injunctions, and restitution under ERISA § 502(a)(3)'s provision for 'appropriate equitable relief.'") (overruled on other grounds); cf. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 155 (1985) (Brennan, J., concurring in the judgment) (noting that § 1132(a)(3)'s authorization for "other appropriate equitable relief … to redress" ERISA violations allows for declaratory judgments); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1203 (10th Cir. 1990) (same). We thus held in *Spitz* that the plaintiff could seek attorney's fees under ERISA. 171 F.3d at 450.

We have been given no reason to treat the FMLA's text ("such equitable relief as may be appropriate") differently

from ERISA's ("other appropriate equitable relief"). See *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Comtys. Project, Inc.*, 576 U.S. 519, 534–35 (2015) (interpreting a federal statute by looking to interpretations of similar language in other statutes). And, on first principles, we are untroubled with extending these holdings to the FMLA context.

The FMLA does not define "equitable relief," and we understand the phrase as a term of art. Cf. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015) (describing a federal statute's use of "terms of art in equity"); *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 195 n.9 (Mich. 1999) (recognizing "equitable remedies" as a legal term of art). So we look to the generally understood meaning of equitable relief in the legal community at the time of the FMLA's passage in 1993. See *George v. McDonough*, 142 S. Ct. 1953, 1963 (2022) (looking to the "prevailing understanding" of a term of art when Congress codified it into law) (citation omitted).

We start with how Congress itself has classified declaratory judgments. See *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 n.3 (2006) (looking "elsewhere in the United States Code" to aid statutory interpretation). The Petroleum Marketing Practices Act of 1978, like many state statutes enacted before the FMLA's passage,[1] describes "equitable relief" as "including declaratory judgment[s]." 15 U.S.C. § 2805(b)(1) ("In any action under subsection (a), the court *shall grant such equitable relief* as the court determines is necessary to remedy the effects of any failure to comply with the [statutory]

---

[1] See, e.g., Fla. Stat. § 496.420(1) (1991); Me. Stat. tit. 10, § 1456 (1975); Minn. Stat. § 325B.08 (1977); N.C. Gen. Stat. § 75-86 (1988); N.D. Cent. Code § 5-04-08 (1981); Ohio Rev. Code § 2743.03(A)(2) (1988); R.I. Gen. Laws § 5-55-8 (1976); Utah Code § 13-12-7 (1975); Va. Code § 59.1-358 (1988).

requirements … *including declaratory judgment*, mandatory or prohibitive injunctive relief, and interim equitable relief.") (emphasis added). Congress did the same thing in the Immigration & Nationality Act, as amended in 1996. See 8 U.S.C. § 1252(e)(1)(A) ("[N]o court may … enter declaratory, injunctive, or other equitable relief … except as specifically authorized … ."). And we have found no statute in which Congress has excluded declaratory judgments from the definition of equitable relief.

That Congress expressly referred to declaratory judgments as equitable in other statutes and not the FMLA does not render such judgments unavailable. Cf. *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (noting that the negative-implication canon "applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded") (citation omitted and cleaned up). Consider a traveler who had previously authorized her travel agent to "book any electric rental car, including hybrids," on a recent trip. If the same traveler later asked the agent to "book any electric rental car" for an upcoming trip, the agent could reasonably accommodate that request by reserving a hybrid car. Read this way, the FMLA tracks our ordinary presumption that Congress uses similar terms consistently across statutes. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167–73 (2012).

Statutory context bolsters this conclusion. See *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022) (words must be "interpreted in their context, not in isolation") (citation omitted). To repeat, the FMLA directs that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected— … for such equitable relief as may be

appropriate, including employment, reinstatement, and pro-motion." 29 U.S.C. § 2617(a)(1)(B). The word "including" sug-gests an illustrative—rather than exhaustive—list and thus "makes clear that the authorization is not limited to the spec-ified remedies there mentioned." *West v. Gibson*, 527 U.S. 212, 217 (1999); Scalia & Garner, at 132 (recognizing that the word "include" does "not ordinarily introduce an exhaustive list"); cf. S. Rep. No. 103-3, 36 (1993) ("This section is intended to provide employees with the right to pursue all varieties of eq-uitable relief … ."). Congress thus had no need to list every form of available equitable relief in the FMLA; its use of the label "equitable relief" was enough. And the three listed rem-edies are relatively intrusive; courts may order an employer to hire, reinstate, or promote an individual. See 29 U.S.C. § 2617(a)(1)(B). It would make little sense for the FMLA to permit courts to grant these heavy-handed remedies yet bar them from using a lighter touch through entry of a declara-tory judgment. See *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (noting that declaratory judgment "is a much milder form of relief than an injunction").

Like Congress, the Supreme Court has also treated declar-atory judgments as equitable, and we assume "when Con-gress enacts statutes, it is aware of [the Supreme Court's] rel-evant precedents." See *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1940 (2022). The Supreme Court has repeatedly found that declaratory judgments "closely resemble" injunctive re-lief, the quintessential equitable remedy. *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011); see *California v. Grace Brethren Church*, 457 U.S. 393, 408–09, 411 (1982) (holding that the Tax Injunction Act "prohibits declaratory as well as injunctive re-lief" and noting that "there is little practical difference be-tween injunctive and declaratory relief"); *Samuels v. Mackell*,

401 U.S. 66, 72–73 (1971) (applying the same *Younger* absten-
tion principles to both injunctive and declaratory relief); *Ab-
bott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967) (stating that
"[t]he declaratory judgment and injunctive remedies are eq-
uitable in nature" and holding that equitable defenses were
available in a declaratory judgment suit challenging adminis-
trative action) (abrogated on other grounds); *Pub. Affs. Assocs.,
Inc. v. Rickover*, 369 U.S. 111, 112–13 (1962) (per curiam) (treat-
ing declaratory action as a form of equitable relief in deciding
to remand the case for further factual development); *Eccles v.
Peoples Bank of Lakewood Vill., Cal.*, 333 U.S. 426, 431 (1948) ("A
declaratory judgment, like other forms of equitable relief,
should be granted only as a matter of judicial discretion, ex-
ercised in the public interest."); *Great Lakes Dredge & Dock Co.
v. Huffman*, 319 U.S. 293, 299–300 (1943) (holding that "[t]hose
considerations which have led federal courts of equity to re-
fuse to enjoin the collection of state taxes … require a like re-
straint in the use of the declaratory judgment procedure" and
noting that a suit for declaratory relief "is essentially an equi-
table cause of action" "analogous to the equity jurisdiction in
suits quia timet or for a decree quieting title"). Yet the Su-
preme Court has not always spoken with one voice. For ex-
ample, it has viewed declaratory relief as legal in some con-
texts, see *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504
(1959) (treating declaratory judgment as legal rather than eq-
uitable), and neither equitable nor legal in others, see *Gulf-
stream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284
(1988) (stating in dicta that "[a]ctions for declaratory judg-
ments are neither legal nor equitable") (abrogated in part by
statute). So, although far from conclusive, the weight of Su-
preme Court authority favors treating declaratory relief as eq-
uitable.

We now turn to history, as the Supreme Court has directed us to do when "interpreting statutes like [this one] that provide for 'equitable relief.'" *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020); see *George*, 142 S. Ct. at 1959 (when Congress employs a term of art, it carries the term's "old soil with it") (citation omitted). We "analyze[] whether a particular remedy falls into 'those categories of relief that were *typically* available in equity'" before the merger of law and equity. *Liu*, 140 S. Ct. at 1942 (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)); *CIGNA Corp.*, 563 U.S. at 439. We use 1938 as our historical baseline because that's when the Federal Rules of Civil Procedure merged law and equity in federal courts. *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016). After considering this history up to 1938, we must decide which label—"legal or equitable"—better fits declaratory judgments. *Id.* (citation omitted); see, e.g., *Mertens*, 508 U.S. at 255 (focusing on the distinction between legal and equitable relief). Here, history resolves any concern left lingering by Congress and the Supreme Court about the scope of the FMLA's equitable relief.

English equity courts have always "had the power to grant declaratory relief … as ancillary to the granting of some principal relief." J.D. Heydon, M.J. Leeming & P.G. Turner, Meagher, Gummow & Lehane's Equity: Doctrines and Remedies § 19-005, at 609 (5th ed. 2015). But England did not authorize declaratory judgments independent of other relief until the 1850s and, at that time, did so only for its equity courts, not its courts of law. See *id.* § 19-015, at 611–12; Edwin M. Borchard, *The Declaratory Judgment—A Needed Procedural Reform*, 28 Yale L.J. 1, 26 (1918); Bernard C. Gavit, *Procedure Under the Uniform Declaratory Judgment Act*, 8 Ind. L. J. 409, 419 (1933) ("[I]n England[,] the first statute and the first court rules on

the subject were addressed exclusively to the Court of Chancery. Practically all of the English cases have been, and are now, brought in that court … ."); *CIGNA Corp.*, 563 U.S. at 439 (looking to whether the kind of lawsuit could have been "brought only in a court of equity, not a court of law" before the merger of law and equity and noting that "the remedies available to those courts of equity were traditionally considered equitable"). Although Congress did not pass the federal Declaratory Judgment Act until 1934, American courts often deployed a form of declaratory judgments in equity "without conscious adoption" of the procedure. Borchard, *A Needed Procedural Reform*, at 30. For example, equity courts could long declare rights to title; entitlement in equity to property to which another has legal title (a constructive trust); the validity or invalidity of a trust and other legal instruments; and the validity or nullity of a marriage. See *id.* at 30–32; John Adams, Doctrine of Equity: A Commentary on the Law as Administered by the Court of Chancery xxxviii, 35–36, 168–69, 201, 288, 328 (8th ed. 1890); *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 263 (1933) (listing cases in which courts "gave no injunction or other relief beyond the determination of the legal rights which were the subject of controversy between the parties," including in suits to determine matrimonial status, for instructions to a trustee or for the construction of a will, and for bills to quiet title); Edwin M. Borchard, *The Constitutionality of Declaratory Judgments*, 31 Colum. L. Rev. 561, 606 (1931) ("The fact is that actions resulting in declaratory judgments have been known to the English and American courts of equity for centuries, … ."). And when some states, including Rhode Island (1876), Illinois (1911), New Jersey (1915), and Florida (1919), first formally authorized declaratory judgments, they did so only in their equity—not common law—

courts.[2] See Borchard, *A Needed Procedural Reform*, at 30; Edwin Borchard, *The Next Step Beyond Equity–the Declaratory Action*, U. Chi. L. Rev. 145, 148 (1946). Facing a binary choice between equity and law, we think this history shows that declaratory relief falls on the equitable side of the divide. Cf. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (noting that declaratory relief closely resembles traditional equitable remedies); *Brett v. Jefferson Cnty., Ga.*, 123 F.3d 1429, 1435 n.14 (11th Cir. 1997) (same).

To be sure, we recognize that leading treatises have described declaratory relief as neither strictly equitable nor legal. See 1 Dan B. Dobbs, Law of Remedies § 1.2, at 11–12 (2d. ed. 1993); 26 C.J.S. Declaratory Judgments § 117; 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2313 (4th ed. 2020). But other scholarship has been less equivocal, with one equity scholar stating that declaratory judgments, like injunctions, are "quintessential equitable relief." Ben Kremer, *Equity and the Common Counts*, *in* Equity and Law: Fusion and Fission 227 n.177 (John C.P. Goldberg, Henry E. Smith & P.G. Turner eds., 2019); see, e.g., Heydon, et al. § 19-315, at 644 ("[I]t is possible to describe declaratory relief as 'equitable' if by that one means that declaratory relief is discretionary (like strictly equitable relief) rather than

---

[2] Act of June 5, 1911, 1911 Ill. Laws 253–54 (granting chancery courts the power to declare a "complainant's right" related to certain equitable subjects through a "final decree upon his bill"); Act of March 30, 1915, ch. 116, § 7, N.J. Laws 185 (authorizing "any person claiming a right cognizable in a court of equity" on certain matters to apply "for a declaration of the rights of the persons interested"); Act of June 9, 1919, ch. 7857, 1924 Fla. Laws 148–49 (limiting declaratory relief to applications "by Bill in Chancery to any Court in this State having equity jurisdiction").

rigidly based on rules (like the common law). And declaratory relief can be called 'equitable' for the purpose of acknowledging its general law antecedents in equity rather than common law."); Gavit, *Procedure Under the Uniform Declaratory Judgment Act*, at 419 ("It seems reasonably clear that on a[] historical classification the power involved is equitable and not common law."). We don't think this mixed scholarship dictates an outcome in either direction. And unlike the commentators, we must choose whether given relief is equitable or legal under the FMLA; we cannot, out of a concern for theoretical purity, dodge the question by picking neither.

At bottom, given our precedents, Congress's definitions in other statutes, statutory context, the weight of Supreme Court precedents, and the equitable origins of the declaratory judgment, we hold that the FMLA's use of equitable relief encompasses declaratory relief. To that end, the district court did not err in awarding a declaratory judgment to Simon under the FMLA.[3]

B

Cooperative next argues that Simon failed to show that its statutory violation prejudiced her, a requirement to obtain relief under the FMLA. See *Ziccarelli v. Dart*, 35 F.4th 1079, 1084–

---

[3] Although the parties placed this issue squarely before us, they have not engaged with the relevant analysis necessary to resolve this appeal. Cooperative argues only that declaratory judgments are unauthorized by the FMLA because they resemble nominal damages, which, it says, are unavailable under the statute. But we've never held that nominal damages are unavailable under the FMLA. See *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 n.6 (7th Cir. 2008) (declining to address whether nominal damages are available under the FMLA). And, as in *Franzen*, we have no reason to address that issue today.

85 (7th Cir. 2022). Prejudice "mean[s] harm resulting from the [FMLA] violation." *Id.*

In its order following a bench trial, the district court made a factual finding that Simon suffered prejudice because Cooperative "parked her in a backwater position with materially fewer responsibilities until her contract ran out" and assigned her a new position resembling that of a paraprofessional, which was "below her professional capacity." Cooperative has not argued that this finding was clearly erroneous, so we accept it as true. *See Murdock*, 461 F.3d at 840.

Given this factual finding, we see no legal error in the district court's holding that Simon proved prejudice. An employee that must give up her fulfilling job for one in which she is overqualified suffers a "real impairment of [her] rights and resulting prejudice," as required by the FMLA. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002). Simon worked below her professional capacity for most of the school year and, like any professional who spends time away from their area of expertise, will likely have to explain away that wasted period to future prospective employers. Indeed, if this case involved an accomplished neurosurgeon returning from leave to a position that required only tracking the hospital's inventory, we doubt that anyone would question whether the surgeon suffered prejudice. So too if an experienced appellate advocate returning to her law firm was tasked only with organizing the firm's files for months on end. Simon, a lead teacher placed as a paraprofessional upon her return from leave for the rest of the school year, is no different. She suffered harm for which the FMLA provides a remedy.

Still, Cooperative argues that Simon suffered only a technical FMLA violation, which caused her no prejudice. For

support, it cites the Supreme Court's decision in *Ragsdale* and several of our decisions. Yet these cases do not aid Cooperative. *Ragsdale* invalidated a regulation, which required an employer to give another 12 weeks off to an employee who had already taken 30 weeks of leave because the employer had neglected to provide the required notice to the employee. 535 U.S. at 88–91. The Court found that this penalty violated the FMLA's remedial design because it was unconnected to any prejudice suffered by the employee due to the employer's lapse (indeed, the employee admitted that she would not have changed her behavior had she received the notice). *Id.* Unlike the plaintiff in *Ragsdale*, who had suffered no harm from the employer's failure to give the required notice, Simon did suffer harm, and a finding in her favor in no way infringes the FMLA's remedial design.

Nor do we see how our precedents support Cooperative's position. Cooperative first cites *Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008). In that case, we affirmed the district court's refusal to award damages after a bench trial because the plaintiff did not and could not return to work following his leave. *Id.* at 430. A plaintiff cannot collect damages for periods of time in which he otherwise could not have worked for the company. *Id.* at 426. Here, in contrast, Simon sought equitable relief—not damages—and she was willing and able to return to work. Cooperative's citation to *Harrell v. U.S. Postal Serv.*, 445 F.3d 913 (7th Cir. 2006), is similarly off base. There, the plaintiff sued his employer for requesting medical information from his doctor without his authorization. *Id.* at 917. We held that this request resulted in no prejudice because the doctor's office refused to release any information to the employer and the incident did not lead to any adverse employment action against the plaintiff. *Id.* at 928. In contrast, the

district court here made a factual finding that Simon suffered actual harm from Cooperative's FMLA violation. Cooperative's last citation, *Hickey v. Protective Life Corp.*, 988 F.3d 380 (7th Cir. 2021), is even further afield. We held in *Hickey* that the plaintiff could not show prejudice because his termination was "unrelated to any activity protected by" the FMLA. *Id.* at 389. Simon's harm (placement in a position below her skill level) directly relates to Cooperative's FMLA violation—its failure to return her to an equivalent job. So neither the Supreme Court's nor our precedents support Cooperative's position that Simon suffered only a technical FMLA violation.

In sum, we find no error in the district court's holdings that the FMLA authorizes the entry of declaratory judgments and that Simon suffered prejudice from Cooperative's failure to return her to an equivalent position following her leave. We therefore affirm the district court's decision on the merits.

IV

We now turn to the district court's attorney's fee award. Cooperative contests only the legal availability—not the substantive reasonableness—of the attorney's fee award. We review the district court's legal conclusion about the availability of fees de novo. See *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 639 (7th Cir. 2019).

The relevant provision of the FMLA states: "The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3) (emphasis added). Despite this mandatory language, Cooperative argues that a declaratory judgment cannot trigger the right to attorney's fees.

Cooperative again cites our decision in *Franzen* to argue that a declaratory judgment is not the type of judgment that would trigger an attorney's fee award under the FMLA. See *Franzen*, 543 F.3d at 431 (holding that an interlocutory jury verdict in the plaintiff's favor, alone, does not trigger attorney's fees). But in *Franzen*, the district court entered judgment for the defendant; there was no entry of a declaratory judgment for the plaintiff. See *id.* at 430. So we fail to see how *Franzen* offers any guidance here.

Second, Cooperative points to *Farrar v. Hobby*, 506 U.S. 103, 105 (1992), which held that a plaintiff was not entitled to an attorney's fee award under 42 U.S.C. § 1988 when he recovered only one dollar on a $17 million claim against six defendants. But *Farrar* is not on point legally or factually. To start, it involved a different statute under which fees are discretionary, see 42 U.S.C. § 1988 ("[T]he court, in its discretion, *may* allow the prevailing party … a reasonable attorney's fee as part of the costs … .") (emphasis added), while the FMLA mandates fees, see 29 U.S.C. § 2617(a)(3) ("The court … *shall* … allow a reasonable attorney's fee … .") (emphasis added). And even if this case involved the same statute, *Farrar* did not announce a categorical rule forbidding attorney's fees when a plaintiff fails to recover compensatory damages. Instead, the Court said, "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, … the only reasonable fee is *usually* no fee at all." 506 U.S. at 115 (emphasis added); see *id.* at 124 (White, J., concurring in part and dissenting in part) (pointing out that the majority "clearly" did not hold "that recovery of nominal damages *never* can support the award of attorney's fees"). Unlike the *Farrar* plaintiff who received only one dollar from the jury on a $17 million claim, Simon did not seek

damages at all at trial. Instead, Simon sought only injunctive and declaratory relief against one defendant, and she succeeded on one of those requests. Cf. *id.* at 116 (O'Connor, J., concurring) ("If ever there was a plaintiff who deserved no attorney's fee at all, that plaintiff was Joseph Farrar. He filed a lawsuit demanding 17 million dollars from six defendants. After 10 years of litigation and two trips to the Court of Appeals, he got one dollar from one defendant."). *Farrar* thus does not render fees unavailable here.

Last, Cooperative argues the district court awarded attorney's fees as a form of punitive damages, which are unavailable under the FMLA. But the district judge merely applied the FMLA as written, which expressly requires attorney's fees after a judgment entered in the plaintiff's favor. See 29 U.S.C. § 2617(a)(3). There's nothing punitive in that. Having rejected each of Cooperative's contrary arguments, we hold that the district court did not err in finding that attorney's fees were available under the circumstances.

AFFIRMED